JAVA JAZZ, INC., Plaintiff–Appellant,

v.

JAZZLAND, INC., et al., Defendants–Appellees.

No. 03–55496.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 2004.

Decided Aug. 27, 2004.

M. Danton Richardson, Esq., Surjit P. Soni, Esq., Leo E. Lundberg, Jr., Soni Law Firm, Pasadena, CA, for Plaintiff–Appellant.

Jeffrey C. Briggs, Esq., Alschuler, Grossman, Stein & Kahan LLP, Santa Monica, CA, for Defendants–Appellees.

Before: REINHARDT and CLIFTON, Circuit Judges, and FOGEL,[2] District Judge.

## MEMORANDUM[1]

The relevant facts are well known to the parties and need not be repeated here. The district court conducted a jury trial on Java Jazz's claim that Jazzland had infringed two of Java Jazz's federally registered trademarks. The jury returned a verdict in favor of Jazzland. Java Jazz asserts on appeal that the jury's verdict is irrational and likely was the result of confusion caused by the district court's decision to admit evidence of a prior Louisiana trademark registration and failure to give appropriate jury instructions.

Ordinarily, a jury's verdict must be upheld if it is supported by "substantial evidence," which is evidence adequate to support the jury's conclusion even if it is possible to draw a contrary conclusion from the same evidence. *See Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir.2002). Although it is not clear from the briefs,

Java Jazz also appears to appeal the district court's denial of its Rule 50(b) motion.[3] The parties agree that the proper statement of applicable law with respect to trademark infringement is the likelihood of confusion test set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).

The district court did not err in concluding that the jury's determination pursuant to the *Sleekcraft* test was supported by substantial evidence. For example, despite the strength of Appellant's mark and the fact that both parties used the term, "Jazzland," there was virtually no evidence of actual confusion, overlapping marketing, or likelihood of expansion of the parties' product lines. *Cf. Sleekcraft*, 599 F.2d at 352—54. The jury could have concluded that a consumer would not be likely to assume that products purchased or services provided by the Java Jazz cafés and restaurants were associated with, or sponsored by, the Jazzland amusement park. *See Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 825 (9th Cir.1993); *cf. Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127. 1130 (9th Cir.1998). The jury rationally could have believed that consumers who entered a Java Jazz café likely would have thought that any products or services associated with the "Jazzland" name were not provided by the amusement park. The jury also could have concluded that there

2. The Honorable Jeremy Fogel, United States District Judge for the Northern District of California, sitting by designation.

1. This disposition is not appropriate for publication and may not be cited by or to the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

3. The parties dispute whether "substantial evidence" or "any evidence" is the appropriate standard of review. Because Java Jazz failed to make a Rule 50(a) motion prior to submis-sion of the case to the jury, its Rule 50(b) motion was procedurally defective. The record does not reflect that Jazzland objected to the Rule 50(b) motion, though Jazzland argues that it could not have done so because the trial judge denied the motion summarily before it could object. Because the instant appeal lacks merit under either standard, we will assume without deciding that the procedural flaw was waived and apply the more liberal "substantial evidence" test.

would not have been confusion inside the amusement park once the Louisiana residents were exposed to Java Jazz's products and services. The *Sleekcraft* factors are nonexclusive; the jury determines whether there is a likelihood of confusion and not whether any one factor is satisfied. The district court properly instructed the jury as to this rule. Appellees' Supplemental Excerpt of the Record ("SER"), pp. 118—19. Because the jury's verdict is supported by substantial evidence, the district court did not err in denying Java Jazz's Rule 50(b) motion.

■ Nor did the district court err in permitting Appellees to introduce evidence of Jazzland's prior registration of the "Jazzland" mark in Louisiana. Evidence of the Louisiana registration clearly was relevant to Jazzland's defense. It supported Jazzland's contention that it did not willfully infringe, *see, e.g.,* SER, p. 19—20, and it also was relevant to the validity of Java Jazz's federal registration, as the Louisiana registration was obtained before Java Jazz filed an application for the federal registration. ER, p. 1730. It is true that Java Jazz could have adopted its mark even with knowledge of a prior state registration, believing that it could prevail against Jazzland in litigation. At the same time, however, the jury also could have concluded that Java Jazz was willing to base its business on a name previously subject to registration in another market because Java Jazz itself did not think con-

sumers would be confused. Additionally, as noted above, there is sufficient evidence to support the jury's verdict even absent consideration of the Louisiana registration.[4] Because potential prejudice or confusion resulting from admission of evidence of the Louisiana registration did not substantially outweigh the probative value of such evidence, the district court did not abuse its discretion in admitting it.

■ Java Jazz also contends that the district court erred by not giving the jury a specific instruction limiting evidence of the Louisiana registration to the issue of willful infringement. However, there is no indication in the record that Java Jazz ever requested such a limiting instruction. The district court did not abuse its discretion by not providing a limiting instruction sua sponte. *See Ostad v. Oregon Health Scis. Univ.,* 327 F.3d 876, 883 (9th Cir. 2003). The district court formulated the jury instructions so that they clearly stated the likelihood of confusion test, fairly and adequately covered the issues presented, and were not misleading. *See White v. Ford Motor Co.,* 312 F.3d 998, 1012 (9th Cir.2002), *amended by* 335 F.3d 883 (9th Cir.2003). The jury instructions did not conflate the likelihood of confusion test with issues relating to the Louisiana registration.

Finally, the district court did not err in refusing to give Java Jazz's requested special jury instruction No. 1. "A court is not

4. Notably, Java Jazz did not object to evidence of the Louisiana registration pursuant to FEDERAL RULES OF EVIDENCE ("FRE") 401—403. Instead, it argued that the Louisiana registration should not be admitted because the Defendant who owned it no longer was a party to the litigation. The district court accordingly dismissed without prejudice Java Jazz's claim that the Louisiana registration was fraudulently obtained, but permitted evidence of the registration for the purpose of liability or willfulness, stating that "whatever argument and separate or additional evidence that would have been proffered in pursuit of that claim no longer should be or may be introduced in this case." SER, p. 20. Java Jazz's counsel, seeking clarification, responded: "Except to the extent that it relates to the issues of willfulness liability?" The district court answered: "Yes." Java Jazz thus did not dispute that evidence of the Louisiana registration was relevant and admissible pursuant to FRE 403.

required to use the exact words proposed by a party, incorporate every proposition of law suggested by counsel or amplify an instruction if the instructions as given allowed the jury to determine intelligently the issues presented." *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League,* 726 F.2d 1381, 1398 (9th Cir.1984). An error in jury instructions does not necessitate reversal if it is more probable than not that the error was harmless. *Jenkins v. Union Pac. R. Co.,* 22 F.3d 206, 210 (9ᵗʰ Cir.1994).

Java Jazz's requested instruction stated that a plaintiff can be awarded a defendant's profits as damages even if the parties were not direct competitors. Java Jazz claims that the district court's failure to give the instruction caused the jury to apply the likelihood of confusion test erroneously. However, it is clear from the face of the instructions actually given by the district court that the jury was instructed to consider issues relating to damages only if it found infringement. The district court first issued instructions concerning the likelihood of confusion test. The instructions included *Sleekcraft'*s list of nonexclusive factors. No instruction included a requirement of direct competition. *See* SER, pp. 109—131. Additionally, the district court instructed the jury that "[t]he presence or absence of any particular factor concerning confusion that I suggest should not necessarily resolve whether there was a likelihood of confusion because you must consider all relevant evidence in determining this." SER, p. 119. After describing the likelihood of confusion test, the district court instructed the jury on damages, first stating: "If you find for plaintiff on plaintiff's infringement claim, you must determine plaintiff's damages." SER, p. 124. Part of the instruction on damages read:

> In addition to actual damages, the plaintiff is entitled to any profits earned by the defendants that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

SER, p. 125.

█ While the jury was not instructed explicitly that it could find for Java Jazz if it determined that Java Jazz and Jazzland were not direct competitors, such an instruction was not required to state the applicable law. The *Sleekcraft* analysis and the "Likelihood of Confusion" instructions do not require a showing of direct competition between Java Jazz and Jazzland as one of the nonexclusive factors in determining whether infringement exists, and none of the instructions given by the district court stated or even implied that direct competition is an element of infringement. The district court's refusal to give Java Jazz's requested instruction thus was not erroneous. *See Jenkins,* 22 F.3d at 210,

AFFIRMED.